OPAPO AFUALO, Plaintiff

v.

PUAILOA TAVETE and SIUFAGA FANENE, Defendants

T.M. PUAILOA, MOEA'I UILIATA, ALAI'A FILIFILI,
and PENIROSA FANENE, Plaintiffs/Objectors

v.

OPAPO AFUALO, Claimant/Defendant

High Court of American Samoa
Land and Titles Division

LT No. 7-88
LT No. 3-89

May 21, 1990

Before REES, Associate Justice, AFUOLA, Associate Judge, and
MATA'UTIA, Associate Judge.

Counsel: For Plaintiff Afualo, Gata E. Gurr
For Defendants Puailoa Tavete and Siufaga Fanene, Charles V.
Ala'ilima

48

For Plaintiff/Objectors Penirosa Fanene and Fanene Family,
Fai'ivae Galea'i
For Plaintiff/Objector Moea'i Uiliata, Tau'ese P.F. Sunia

These consolidated cases concern a 24-acre tract referred to as "Malaeimi" or "part of Malaeimi." It is located on the western slopes overlooking the Malaeimi Valley, adjacent to the village of Faleniu. Opapo Afualo has offered it for registration as the individually owned land of "the children of Luteru Afualo."

This tract is immediately to the west of the 300-acre tract (also called "Malaeimi") long occupied by the Mormon Church and held in *Reid v. Puailoa*, 1 A.S.R.2d 85 (1983), to be the communal property of the Puailoa family of the village of Nu'uuli. It is also slightly to the east of an area called Mesepa or Mapusaga Tuai, a part of Faleniu belonging to Alai'a and Moea'i among other families of that village. *Moea'i v. Te'o*, 8 A.S.R.2d 85 (1988), *aff'd sub nom. Moea'i v. Alai'a*, 12 A.S.R.2d 91 (1989).

The Puailoa, Moea'i, and Alai'a families have all objected to Afualo's offer of registration. The fourth objector is Penirosa Fanene for the Fanene family of Nu'uuli.

In addition to the Afualo registration case (LT No. 7-88) we are presented with an injunctive action by Afualo against Puailoa and his son-in-law (LT No. 3-89). The two cases were consolidated for trial.

Finally, we note that all but about 7.6 acres of the land now in dispute is also included in a 153-acre tract which has been offered for registration by Puailoa. Moea'i is the only objector to the Puailoa registration, which is presently pending before the Court as LT No. 7-88. Although that case was inadvertently not consolidated with the present cases, it is important to the present proceeding in at least two ways. First, a map of the 153-acre Puailoa survey and accompanying exhibits have been introduced as evidence of Puailoa's claim. Second, Puailoa argues that because Afualo, Alai'a, and Fanene failed to lodge timely objections to the 153-acre survey when it was offered for registration in 1986, they are barred from asserting claims to that tract or any part of it in any subsequent proceeding, including this one.

49

## I.    Afualo's Claim

Opapo Afualo bases his claim on individual occupation and cultivation. He claims that his father began occupying and cultivating the 24-acre tract in 1932 and that no one interfered with him until recently.

The evidence is overwhelming, however, that Afualo's father came to Malaeimi in his capacity as an official or employee of the Church. It was the practice of the Church to let members and employees cultivate small plots for their own use within Church lands. Such cultivators, however, were acting as licensees of the Church rather than as putative owners. Activities on the land in pursuance of a license, no matter how extensive and no matter what the original state of the land, cannot give rise to a claim of ownership. *See, e.g.*, *Tuileata v. Talivaa*, 3 A.S.R. 201 (1956); *Satele v. Uiagalelei*, 6 A.S.R.2d 143, 145 (1987) (licensee who occupied land for many years and established a large commercial farm did not thereby acquire title).

Counsel for Afualo relies heavily on the fact that the land claimed in the present case was outside the 300-acre tract then thought to belong to the Church. In the context of the circumstances surrounding the senior Afualo's presence in Malaeimi, however, this is insufficient to prove that he acted on his own account under a claim of right in cultivating such lands. While it is theoretically possible that the same person could have cultivated lands inside the Church tract in his capacity as a Church employee while simultaneously cultivating immediately adjacent lands under a claim of ownership, in the present case there is no evidence (other than the bare assertion of Opapo Afualo) to support this hypothesis. On the contrary, the evidence is to the effect that in those days Church members did not know exactly where the boundary was. This is a far more plausible explanation than the dual-roles hypothesis for any Afualo cultivations that may have been outside the Church tract.

Moreover, the preponderance of the evidence (including that offered by Afualo's own principal witness other than himself) was to the effect that Luteru Afualo's plantings were primarily in an altogether different area than the one now in dispute. While he apparently did have some association with some plantings in the southeastern portion of the present 24-acre survey, these plantings appear to have been a Church project carried out by a group of schoolchildren of whom Luteru Afualo was the supervisor. (The evidence, including aerial photographs, is that the northern part of the 24-acre survey was not extensively cultivated by

50

anyone until quite recently. This area is on a fairly steep hillside at elevations between 500 and 700 feet.)

The argument that Luteru was acting as owner of the land is further contradicted by the evidence that he and his family left the land when their Church service in Malaeimi ended. They were absent for many years until the fairly recent return of Opapo Afualo. At first Opapo worked at least primarily within the 300-acre Church tract. When Puailoa recovered this tract from the Church in 1983, Afualo made his peace with Puailoa and continued to work on the 300-acre tract. Although he may also have worked some adjacent lands, as did the Puailoas themselves during this period, Afualo never claimed individual ownership of any of the land he was cultivating until after Puailoa ordered him to leave in 1987.

Since we find that Afualo has not presented evidence sufficient to establish his claim of ownership, we need not decide whether he was barred from doing so by his failure to object to the 1986 Puailoa survey.

## II. The Claims of Puailoa, Moeaʻi, and Alaiʻa

Puailoa's claim to the 24 acres --- and to the whole 153 acres he offered for registration in 1986 --- is based primarily on the idea that the owner of a valley has a right to the adjoining mountainsides as a sort of curtilage or natural frontier. Although this proposition has some support not only in Western political theory but also in Samoan tradition, it is demonstrably not a principle of universal application. While almost every Samoan land claimant believes that the true and original extent of his family's holdings was "from the mountaintop to the ocean reef," the island of Tutuila has for some years had rather more families than mountains. Accommodation, itself important to Samoan tradition, has been necessary. A walk from the mountain to the shore more often than not traverses the lands of five or ten landholders, each perhaps believing the others to be ancient usurpers, each more or less resigned to the imperfect boundaries that have evolved over time.

In deciding between competing claims to ownership of communal land in Samoa, therefore, the Court must look primarily to the facts: to the record of occupation and cultivation rather than to claims based on family history. In the present case the Puailoas are strong on family history but weak on occupation and cultivation. Puailoa himself admits that his family was absent from the land presently in dispute from "after World War II" until about 1971. The best evidence is that the

51

absence was of even longer duration. Indeed, it appears that the only people who worked on the slopes west of the 300-acre tract then occupied by the Church at any time between about 1900 and about 1979 were (a) Church members whose plantings extended beyond the boundaries of the Church tract, probably by inadvertence; and (b) families of the adjoining village of Faleniu, including the Moeaʻi and Alaiʻa families.

This evidence would ordinarily lead to the conclusion that the family histories of the Faleniu claimants --- in which the slopes belonged to them and to other Faleniu families, not to Puailoa --- are the correct histories and that Moeaʻi and Alaiʻa ought to prevail. In the present case, however, it is necessary to take note of a plausible alternative explanation.

Perhaps the single undisputed fact about the Malaeimi Valley that emerges from the many cases litigated about it during the last hundred years is that it was once the site of a village that was later abandoned. Fanene and Puailoa, two chiefs of Malaeimi, moved to the village of Nuʻuuli. Other Malaeimi people, however, appear to have moved to Faleniu. (Faleniu is immediately adjacent to Malaeimi, whereas Nuʻuuli is a larger and more distant village.) It was these immigrants to Faleniu who continued to visit Malaeimi, to gather timber, and to guard against encroachments by strangers during the years or centuries in which nobody lived there. *See Puailoa v. Alo Taisi*, 1 A.S.R. 196 (1909). In 1909, however, the Court concluded that these Faleniu caretakers were operating by appointment and authority of Puailoa. *Id.* at 196.

The 1909 case was between Puailoa and a chief of Fagasa, a village on the opposite side of Malaeimi from the land presently in dispute. It concerned a small tract within the 360 acres then leased to the Church, apparently at the Fagasa end of the valley. No one from Faleniu was a party to the case. Although at least one Faleniu chief was a witness for Puailoa, he was not an ancestor in title of either of the two present claimants. It would therefore be improper to treat the present Faleniu claims as barred either by res judicata or by collateral estoppel. On the other hand, we cannot ignore the possibility that the Faleniu occupation of the mountainsides during the Twentieth Century might have been subject to the general overlordship of Puailoa, as the 1909 Court found to be the case with Faleniu activities in the valley itself during the Nineteenth Century. Since no party to the present case has specifically

addressed this question, for us to attempt a definitive resolution of it would both difficult and inappropriate.

Finally, a determination that the land in dispute belongs to the Faleniu claimants --- the result most consistent with the evidence in the present case, leaving aside any inference from the 1909 decision --- could not lead to a judgment in favor of either claimant. Neither Moea'i nor Alai'a put on any particular evidence of his family's boundaries. Instead, the two agreed to join forces and to confine themselves to arguing for the proposition that the whole 24 acres belongs to the village of Faleniu. This may well be. With rare exceptions, however, land in Samoa is owned by families rather than villages. *Olo v. Fuimaono*, AP Nos. 27-81 & 28-81 (1982). The Faleniu claimants have not proved that this case is among the exceptions to this rule; on the contrary, it seems clear that Moea'i believes his own family to own much of the land in dispute, notwithstanding his tactical alliance with Alai'a.

We do note that the Alai'a claim is not barred by the claimant's failure to object to Puailoa's survey in 1986. That survey was performed in 1980 under the auspices of the pulenu'u of the "Village of Malaeimi," ostensibly a subdivision of the Village of Nu'uuli. To the exact extent that the Faleniu chiefs can prove their case on the merits --- i.e., that the slopes to the west of the valley are part of Faleniu --- the survey will have been shown to be facially inconsistent with the territorial statute on land registration, A.S.C.A. § 37.0101 et seq., since the notice required by the statute was not given to the chiefs of Faleniu. "Courts can and do disregard registrations . . . in which the failure to afford the required notice affirmatively appears in the record of the registration itself." *Ifopo v. Siatu'u*, 12 A.S.R.2d 24, 28 (1989). *See also Faleafine v. Suapilimai*, 7 A.S.R.2d 108 (1988). (The record reflects that the 24-acre survey in the present case, unlike Puailoa's earlier 153-acre survey, was conducted with notice to the chiefs of Faleniu.)

With respect to the claims of Puailoa, Moea'i, and Alai'a, therefore, we can find facts but draw no legal conclusion. The best evidence of occupation and cultivation of this area, other than by Church members immediately adjacent to the Church boundary, was by various families of Faleniu. Whether this occupation and cultivation was under a claim of right (as we would ordinarily presume) or whether it was pursuant to a still-existing relationship between Puailoa and certain Faleniu people dating back to the ancient village of Malaeimi (as the 1909 case suggests but does not resolve) is a question we have insufficient evidence to decide.

53

## III.    The Fanene Claim

Fanene, like Puailoa a chief of Nu'uuli, is also reputed to have been a chief of the ancient village of Malaeimi.  The Fanene family has been judicially acknowledged to be the owner of Malaeimi on the sea side of the main government road.  *See, e.g., Tu'utau v. Fanene*, No. 1-1931 (1932).  The land presently in dispute is on the mountain side.  Fanene contends, however, that he owns a certain tract within this land, at the edge of the mountain but not otherwise precisely identified, by right of original occupancy.  He testified that he went on this land at some time during the 1970s and cultivated it for several years before abandoning it.

The timing and approximate location of the plantings now asserted by Fanene suggest that they may have been the very ones involved in *Reid v. Fanene*, LT No. 7-79, one of the consolidated cases decided in *Reid v. Puailoa, supra*.  In that case it was held that "the Fanene family has no interest in or right to the subject land."  *Id.*, 1 A.S.R.2d at 86.  Although the holding of *Reid* extended only to the 300-acre Church tract, the trial court's conclusion with respect to the Fanene family appears to have been that they were on the wrong side of the road.  *See Reid v. Fanene, supra*, slip opinion at 16 (summarily disposing of Fanene's claim with a citation of *Tu'utau v. Fanene, supra*).  Fanene would therefore be collaterally estopped to assert his present claim.

This claim must also fail on the merits.  For the reasons we have stated in our discussion of the Puailoa, Moea'i, and Alai'a claims, the Malaeimi valley and the surrounding mountains were not available in 1970 to be claimed by "original" occupation and cultivation.  At least 300 acres, comprising the bulk of the valley and also including the lower part of the western slopes, was the communal land of the Puailoa family.  The higher ground had long been occupied by Faleniu people, as had the valley itself prior to the coming of the Church shortly after 1900.  Whether the occupation of the slopes was on the occupants' own account or under the authority of Puailoa is a question to be settled or litigated among the parties in question, but it rendered the land insusceptible of new "original occupation."  The land already had an owner or owners, who could be divested of title only by thirty years' worth of adverse possession (or twenty years, if completed before the statute was amended in 1982).  Fanene does not claim to have occupied any land on the mountain side of the road for twenty years.  (This analysis also applies to the Afualo claim.)

54

Finally, Fanene's claim may be barred by failure to object to the Puailoa survey even if it was not properly noticed, since the record reflects that he had actual notice of the survey. The record reflects that Fanene himself was the pulenu'u of the "Village of Malaeimi" who certified that notice had been given.

## IV. Conclusion

The Afualo survey cannot be registered. The land in question appears to belong either to some family or families of Faleniu or to Puailoa. Judgment will issue denying the claim of Afualo.

Since Afualo does not own the land, the collateral relief requested in LT No. 7-88 will be denied. The preliminary injunction will remain in force for ninety days in order for Afualo to harvest any crops and remove any other property he may have on the land.

Our decision in this case is without prejudice to the right of Puailoa, Moea'i, or Alai'a to bring any subsequent action with regard to the land in question. If Puailoa wishes to press his claim to his 153-acre survey or to any part of it, however, he would be well advised to review the record and to cure any statutory deficiencies. (The 153-acre survey appears to include not only the western Malaeimi slopes up to an elevation of over 1000 feet, but also a substantial portion of the opposite slope overlooking Mesepa. If Puailoa is sure that the Court will hold these mountains to be part of Nu'uuli rather than of Faleniu or some other village, he will presumably find no need to cure any deficiencies in the survey process.)

Judgment will issue denying the offer of registration and denying the requested collateral relief.

It is so ordered.